**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

SAAD YATRIBI,

      Plaintiff,

      v.

SWIRE PACIFIC HOLDINGS, Inc. (d/b/a SWIRE COCA-COLA, USA),

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Saad Yatribi, by and through counsel Iris Halpern and Nicholas A. Lutz of RATHOD | MOHAMEDBHAI LLC, respectfully alleges in his Complaint and Jury Demand as follows:

**NATURE OF THE ACTION**

This is an action under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") as amended by Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), to correct unlawful race, ethnic, national origin, and religious discrimination and retaliation. As alleged with greater particularity below, Plaintiff alleges that Defendant Swire Pacific Holdings, Inc. (d/b/a Swire Coca-Cola, USA) ("Swire Coca-Cola") violated the law by denying Plaintiff equal employment opportunities and by creating and maintaining a hostile work environment because of Plaintiff's race, ethnicity, national origin, and/or religion in violation of Title VII and

Section 1981, and by retaliating against Plaintiff when he opposed and complained about the harassment and discrimination.

## II. JURISDICTION AND VENUE

1.      Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981 and §1981a.

2.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the employment practices alleged herein to be unlawful were committed within the District of Colorado, and at the time of the events giving rise to this litigation, all of the parties resided in Colorado.

## III. PARTIES

3.      Plaintiff Saad Yatribi worked for Swire Coca-Cola and two predecessor corporations in multiple positions from October 2005 until January 2016.

4.      Defendant Swire Pacific Holdings, Inc. (d/b/a Swire Coca-Cola, USA), is a Colorado corporation with a principal mailing address at 9900 E. 40th Ave, Denver, Colorado 80238. Defendant Swire Coca-Cola employed Plaintiff within the meaning of Title VII.

5.      Defendant Swire Coca-Cola employed 500 or more employees in 2014.

6.      Defendant Swire Coca-Cola employed 500 or more employees in 2015.

7.      Defendant Swire Coca-Cola employed 500 or more employees in 2016.

8.      Swire Coca-Cola purchased the operations of Coca-Cola Refreshments ("CCR") on May 24, 2014.

2

9.      In addition to direct liability for any discrimination, harassment, and retaliation in 2014 and thereafter, Swire Coca-Cola is also a successor in law to CCR, and thus liable for any acts of harassment described in this Complaint that occurred prior to 2014.

     a.   Swire Coca-Cola has substantially continued CCR's business operations.

     b.   Swire Coca-Cola uses the same bottling plant and facilities as CCR, including the same machinery, equipment, and methods of production as CCR.

     c.   Swire Coca-Cola does essentially the same work as CCR performed, selling the same products and services as CCR under substantially the same working conditions for its employees.

     d.   Swire Coca-Cola retained the same or substantially the same supervisory personnel, including the central management actors relevant to this case.

     e.   Swire Coca-Cola had notice of all the complaints of discrimination and harassment, both those made internally and those filed with the Equal Employment Opportunity Commission ("EEOC"), that are relevant to this case.

## IV. <u>FACTUAL ALLEGATIONS</u>

### BACKGROUND

10.     Plaintiff Saad Yatribi was born in Morocco.

11.     Mr. Yatribi emigrated to the United States from Morocco in 1998.

12.     Mr. Yatribi is of Arab and Middle Eastern descent.

13.     Mr. Yatribi also adheres to the Islamic faith.

14.     In approximately October 2005, Mr. Yatribi began working as a merchandiser with CCR's predecessor, Coca Cola Enterprises Inc. ("CCE").

15.     CCE promoted Mr. Yatribi to a small stores account manager position, a position in which he remained after CCR acquired CCE in 2010.

16.     After Defendant Swire Coca-Cola acquired CCR on May 24, 2014, Mr. Yatribi continued to work as a small stores account manager.

17.     Swire Coca-Cola produces, sells, and distributes Coca-Cola and other Coca-Cola products to retailers in numerous American markets such as gas stations, convenience stores, restaurants, and hotels.

18.     Mr. Yatribi's position as a small stores account manager entailed managing client accounts, ordering product, restocking product, removing and replacing expired product, and ensuring that products were arranged consistently with the company's "brand flow" policies.

19.     In satisfying these responsibilities, Mr. Yatribi drove different routes across the Denver metropolitan area to meet with clients, inspect in-store products and merchandise displays, fill new orders, and remove and replace expired products, among other tasks.

20.     Mr. Yatribi was immediately successful in his role as a small stores account manager and he quickly received praise and recognition from his coworkers and supervisors. For example:

a. Key Account Manager, and Mr. Yatribi's former manager, Lisa Logan, recalls no problems with Mr. Yatribi's performance during the 45 months she supervised him, and believed that she and Mr. Yatribi "had a really good relationship."

b. Senior Area Sales Manager Richard Plaisance, who managed Mr. Yatribi between 2011 and the end of Mr. Yatribi's employment, found him to be a "solid rep," "respected," and "knowledgeable."

c. Area Sales Manager Adam Terrin, who supervised Mr. Yatribi, described Mr. Yatribi's performance as "great," stating Mr. Yatribi came to work "every day," needed very "few coaching opportunities," and was an overall "good guy" and "good employee."

d. Mr. Yatribi received either quarterly bonuses, merit-based increases, or both, every single year of his employment.

e. Between 2005 and 2014, Mr. Yatribi received not one written counseling or discipline.

### MR. YATRIBI WAS SUBJECTED TO DISCRIMINATORY HARASSMENT

21. In approximately 2011, Mr. Yatribi began to experience harassment by his managers including Senior Area Sales Manager Plaisance, Area Sales Manager Terrin, and Key Account Manager Logan.

22. The harassment started on or about the time that U.S. Navy Seals successfully assassinated Osama Bin Laden, an architect of the 9/11 terrorist attacks on the United States, and leader of Al-Qaeda.

23.     Between 2011 and January 15, 2016, Mr. Yatribi's managers subjected

Mr. Yatribi to numerous derogatory comments, insults, and racist and Islamophobic

jokes. For example:

a.   On the day US forces assassinated Bin Laden, Lisa Logan asked Mr.

Yatribi, "Did you hear? They got your uncle. He looks just like you," referring

to Osama Bin Laden.

b.   Manager Lisa Logan made multiple jokes about Mr. Yatribi being wired

with a bomb including words to the effect of,

i.   "Are you hiding a bomb under your coat."

ii.   "Do you have wires in your coat?"

iii.   "Don't blow us up."

c.   Ms. Logan referred to Mr. Yatribi as "Al-Qaeda" on numerous occasions.

d.   Ms. Logan also referred to Mr. Yatribi as a "terrorist" on numerous

occasions.

e.   More than once, Mr. Plaisance told Mr. Yatribi that he needed to trim his

beard because he looked like "those guys on the news," referring to terrorists.

f.   In one incident, Mr. Yatribi and his son, age 5, attended a company tree-

planting event. When Mr. Yatribi and his son arrived, Mr. Plaisance

commented that Mr. Yatribi and his son "look[ed] like they were going to steal

hub caps, not plant trees."

g.  After a meeting, one of Mr. Yatribi's managers told Mr. Yatribi to "take the left-over pizzas to feed your twenty kids," invoking the stereotype that men of Middle Eastern or Arab descent have too many children.

h.  Mr. Plaisance frequently mispronounced Mr. Yatribi's first name as "Sad," and made jokes, such as "Sad, don't be sad" and "Sad, are you sad today?", so as to make fun of Mr. Yatribi's non-Anglo name.

i.  Prior to a company holiday party, Mr. Plaisance told Mr. Yatribi, "Don't worry Saad, there won't be any pork there," deriding the fact many Muslims like Mr. Yatribi do not eat pork.

j.  Mr. Plaisance and Mr. Yatribi's supervisor, Mr. Terrin, often referred to Mr. Yatribi as a "foreigner" in the presence of other employees. The last time this happened, before Mr. Yatribi's employment ended, Mr. Terrin told Mr. Yatribi "you don't get any because you're a foreigner" after Mr. Yatribi inquired about new marketing materials after a district sales team meeting.

24.  Knowing that his religious beliefs do not condone such conduct, Ms. Logan frequently made overtly sexual comments to Mr. Yatribi, including:

a.  "The reason I can sell promotions is because I have boobs," while squeezing her breasts.

b.  Referring to promotional sales representatives as "sluts."

25.  While the above examples are illustrative of the types of abuses Mr. Yatribi endured, they are not an exhaustive list. These types of incidents of harassment were a near constant part of Mr. Yatribi's work life.

26.     At no point did anyone in management intervene in these incidents of harassment. In fact, in each, at least one manager actually participated in perpetuating the harassment.

27.     In approximately 2013, Mr. Yatribi complained about the racial and religious discrimination he was facing via an email addressed to the Human Resources Department.

28.     Mr. Yatribi did not receive a response to his complaint.

### MR. YATRIBI COMPLAINED TO SWIRE COCA-COLA ABOUT DISCRIMINATION

29.     On May 4, 2015, Mr. Yatribi met with Swire Coca-Cola's Human Resources Business Partner Stephanie Jardim to discuss the ongoing discrimination and harassment.

30.     Mr. Yatribi recounted to Ms. Jardim many of the incidents detailed above.

31.     Ms. Jardim asked Mr. Yatribi to provide her with a written statement detailing his concerns.

32.     Mr. Yatribi provided Ms. Jardim with a report detailing several incidents of racist and Islamophobic comments made by his current management team including that:

a.  "Rich made a comment twice about my beard and that I needed it trimmed because I look the people on the news."

b.  "Rich made an offensive comment toward me and my 9yr old son at the time when we volunteered to plant trees at an event . . . say[ing] 'you guys look like you're going to ste[al] h[ub] caps not plant trees.'"

c.   "I was addressed by management in Rich Plaisance's presence as a

terrorist [and] other jokes were made about bombs and wearing wires. And

that I looked like Bin Laden . . ."

d.   Comments were made by management, 'take the left over pizzas to feed

your twenty kids . . .'"

e.   "Rich addressed me as 'Sad' instead of Saad."

f.   "Adam Terrin, had addressed me as a 'foreigner' twice in front of account

managers . . ."

g.   Rich made a comment . . . "don't worry Saad there won't be any pork

there," referring to a company party. "[I]t was offensive. I don't eat pork or

drink alcohol due to my religio[us] belie[f]s."

33.   Mr. Yatribi also asked Ms. Jardim that his complaints be kept anonymous

and explained that he feared being retaliated against by his supervisors.

34.   Ms. Jardim informed Mr. Yatribi that she would investigate his complaint

and follow up with him at a later date.

35.   In the months that followed, Ms. Jardim produced an internal investigation

report for Swire Coca-Cola's Human Resources Department.

36.   Ms. Jardim's final report substantiated many of Mr. Yatribi's complaints.

Ms. Jardim found for example that:

a.   "People are still upset because nothing was done with the first complaint

against Lisa Logan and Richard Plaisance regarding favoritism,

religious/racial comments."

b. "[It is] [n]ot a safe environment [for employees] - they get retaliated against."

c. One employee "[s]tated she was present when Richard made the comment about Saad's beard in front of everyone at a meeting. She said that Saad responded that it was due to his religion and he took offence."

d. Another employee, referred to as White female (2) in the report, "expressed that the working environment was terrible and that she has heard racial comments made and feels that there is favoritism."

e. Ms. Jardim also found that Mr. Plaisance made other racist remarks in the workplace including, when speaking of a Wal-Mart in Aurora, Colorado, words to the effect of "what do you expect, they are all Blacks and Mexicans."

37.     Ms. Jardim's report was reviewed and edited over the course of a three-month period by Senior Human Resources Manager Matt Lambert.

38.     Notably, over the course of several drafts exchanged between Ms. Jardim and Mr. Lambert, the report was altered to reflect more favorably on Swire Coca-Cola and to reduce the culpability of Mr. Yatribi's managers. For example:

a. The report was altered to include the comment that Mr. Plaisance felt remorse for his racist comments about Mr. Yatribi's beard.

b. The original report read, "Also favoritism was mentioned by three employees. I would recommend sensitivity training for all managers in this department to train them on what is inappropriate and cultural sensitivity. It does not appear that Richard or Lisa did anything out of malice." But the final

report concluded, "The comment about the beard and Saad's name being said incorrectly was substantiated during the investigation. Also, favoritism was mentioned by three employees, but there was no clear indication that it based on gender, ethnicity, or religion."

39.    Ultimately, Swire Coca-Cola took no remedial action against Mr. Plaisance, Ms. Logan, or Mr. Terrin, despite its own internal investigation substantiating Mr. Yatribi's complaints of discriminatory harassment:

a.  Mr. Plaisance, Mr. Terrin, and Ms. Logan were not issued written discipline.

b.  Mr. Plaisance, Mr. Terrin, and Ms. Logan were not suspended or terminated.

c.  Mr. Plaisance, Mr. Terrin, and Ms. Logan received merit-based pay increases in 2015 and 2016.

d.  Mr. Plaisance, Mr. Terrin, and Ms. Logan received bonuses in 2015 and 2016.

40.    No one at Swire Coca-Cola ever informed Mr. Yatribi of the results of Ms. Jardim's investigation.

41.    No one at Swire Coca-Cola ever provided Mr. Yatribi a copy of Ms. Jardim's report.

## SWIRE COCA-COLA DENIED MR. YATRIBI A PROMOTION

42.    On or about November 11, 2015, just months after Mr. Yatribi had complained to Ms. Jardim about discrimination based on his race, national origin, and religion, Mr. Yatribi applied for a promotion to an area sales manager position.

43.    Out of 14 total applicants, Swire Coca-Cola determined that three were qualified for the position, including Mr. Yatribi.

44.    On or about November 17, 2015, after receiving Mr. Yatribi's application, Mr. Plaisance initiated an audit of one of Mr. Yatribi's stores.

45.    On or about the same week, however, Mr. Plaisance notified one of the other applicants, Josh Pavlovich, that he had one week to "clean up" his store before his audit.

46.    Mr. Pavlovich is a white male who does not adhere to the Islamic faith.

47.    Mr. Pavlovich has never complained about discriminatory harassment at Swire Coca-Cola.

48.    Unlike Mr. Pavlovich, Mr. Plaisance did not provide Mr. Yatribi any advance notice of his audit.

49.    On November 24, 2015, Mr. Plaisance informed Mr. Yatribi that he would not be permitted to interview for the area sales manager position.

50.    On or about December 1, 2015, Mr. Pavlovich received the area sales manager promotion.

51.     Swire Coca-Cola's stated reason for denying Mr. Yatribi the right to interview for the area sales manager position was that Mr. Plaisance had found outdated product in Mr. Yatribi's stores during the audit.

52.     Mr. Pavlovich later admitted to several of his coworkers that Mr. Plaisance had given him notice a week in advance of his audit to clean up any problems that might exist in his territory.

53.     Mr. Yatribi was not provided the same opportunity to rectify problems within his territory as his white, non-Muslim counterpart. Instead, Mr. Yatribi was immediately disqualified from consideration for the area sales manager position.

54.     Mr. Yatribi had significantly more years of experience as a small stores account manager than Mr. Pavlovich.

55.     Mr. Yatribi was also the most senior Swire Coca-Cola employee to have applied for the area sales manager position.

56.     Mr. Yatribi had significantly more experience than Mr. Pavlovich working with District Managers, a requirement of the position, than Mr. Pavlovich.

57.     Mr. Yatribi frequently filled in for Swire Coca-Cola area sales managers, including Adam Terrin, when they were on leave or vacation.

58.     Mr. Yatribi also trained other small stores account managers.

59.     Mr. Pavlovich had none of the above qualifications or experience when he was promoted to area sales manager.

60.     At the time of Mr. Pavlovich's promotion, he had been working in a small stores account manager role for less than a year.

**MR. YATRIBI AGAIN COMPLAINED ABOUT DISCRIMINATION AFTER THE FAILURE TO PROMOTE**

61.     On or about December 2, 2015, Mr. Yatribi asked to meet with Division Vice President Lance Wright.

62.     On December 7, 2015, Mr. Yatribi met with Mr. Wright, accompanied by his coworker Adam Smith.

63.     Mr. Yatribi told Mr. Wright that he believed the reason he was denied an interview for the area sales manager position was that Mr. Plaisance was retaliating against him.

64.     Mr. Yatribi told Mr. Wright that Mr. Plaisance had discriminated against him by making racial comments and jokes.

65.     Mr. Yatribi told Mr. Wright that he had complained to Ms. Jardim in Human Resources and that no one at Swire Coca-Cola had followed up with him about his complaints.

66.     Mr. Wright stopped Mr. Yatribi and told him that he needed to report the issue to Human Resources, but Mr. Wright did nothing himself to investigate or intercede and stop the discrimination.

67.     Mr. Yatribi, along with Mr. Smith, met with Human Resources Business Partner Cyndi Johnson on December 8, 2015.

68.     During the meeting with Ms. Johnson, Mr. Yatribi explained that he felt he continued to be discriminated against by management.

69.     Mr. Yatribi explained to Ms. Johnson that he did not believe that Mr. Plaisance denied him an interview for work-related reasons.

70.     Mr. Yatribi told Ms. Johnson that he felt that Mr. Plaisance had denied Mr. Yatribi an interview because of Mr. Yatribi' s religious beliefs and his ethnicity, and in retaliation for his prior complaints about Mr. Plaisance, Ms. Logan, and Mr. Terrin.

71.     Mr. Yatribi told Ms. Johnson that Mr. Plaisance had made numerous derogatory comments about Mr. Yatribi being Muslim and Arab.

72.     Mr. Yatribi also requested to be transferred out of Mr. Plaisance's department.

73.     Mr. Yatribi further explained that he had complained about discrimination by the same managers in the past to Ms. Jardim.

74.     Ms. Johnson was entirely unaware of Mr. Yatribi's prior complaints of discrimination. She admitted to Mr. Yatribi that this was the first time she had heard of his complaint, and that she knew nothing about an investigation.

75.     Mr. Yatribi requested that Ms. Johnson review the written complaints he had previously submitted to Ms. Jardim.

76.     Because no one at Swire Coca-Cola had ever followed up with him after his other complaints of discrimination, Mr. Yatribi still thought no investigation had ever taken place, so he asked Ms. Johnson to investigate.

77.     Ms. Johnson asked Mr. Yatribi if the discrimination complaints he had previously raised to Ms. Jardim had been resolved.

78.     Mr. Yatribi told Ms. Johnson that his complaints had not been resolved.

79.     Ms. Johnson assured Mr. Yatribi that she would investigate Mr. Yatribi's concerns and attempt to find a resolution.

80.     Ms. Johnson also told Mr. Yatribi and Mr. Smith not to "take your issues to court," and that "we prefer to handle things in-house."

**MANAGEMENT DISCIPLINED MR. YATRIBI FOLLOWING HIS COMPLAINT TO MS. JOHNSON**

81.     The following day, December 9, 2015, Ms. Johnson called Mr. Yatribi to a meeting with Ms. Johnson and Mr. Yatribi's direct supervisor, Mr. Terrin.

82.     Ms. Johnson began the meeting by telling Mr. Yatribi that he had not been given the opportunity to interview for the area sales manager position because Mr. Yatribi's manager, Mr. Plaisance, had audited one of Mr. Yatribi's stores and found out-of-date product.

83.     Ms. Johnson then handed Mr. Yatribi a disciplinary action form addressing the results of that audit and disciplining Mr. Yatribi for the out-of-date product.

84.     Without any warning, Ms. Johnson then suddenly asked Mr. Yatribi if any other comments regarding his race or religion had been made to him.

85.     Mr. Yatribi, sitting in front of a supervisor who had made numerous discriminatory comments to him, and who Mr. Yatribi expressly identified as someone from whom he feared retaliation, replied in the negative.

86.     Until this point, Mr. Yatribi believed that Swire Coca-Cola had maintained his anonymity, as originally requested, and was startled and distressed to find out that had not been the case.

**SWIRE COCA-COLA DISREGARDED ITS OWN POLICIES TO INTERVIEW FOR THE AREA SALES MANAGER POSITION WITH ANOTHER WHITE MALE**

87.     Approximately four months after he was promoted to the area sales manager position, Josh Pavlovich left Swire Coca-Cola.

88.     Adam Smith applied for, and was interviewed for, a promotion to the area sales manager position.

89.     Mr. Smith is another white male who does not adhere to the Islamic faith.

90.     Swire Coca-Cola policy dictates that Swire Coca-Cola employees are not eligible for promotion if the employee in question has been disciplined within six months of the application for promotion.

91.     However, Mr. Smith had been disciplined for a prior audit at the same time as Mr. Yatribi.

92.     Despite Swire Coca-Cola's internal policy, Mr. Smith was nevertheless interviewed for the area sales manager position, a courtesy not afforded Mr. Yatribi four months earlier.

93.     In addition, this time, none of Mr. Smith's territories were audited prior to his interview for the promotion to area sales manager.

### SWIRE COCA-COLA TERMINATED MR. YATRIBI AFTER HE FILED AN EXTERNAL CHARGE OF DISCRIMINATION

94.     On December 15, 2015, Mr. Yatribi was injured in a car accident while performing his work duties.

95.     Swire Coca-Cola placed Mr. Yatribi on light duty for almost a year thereafter.

96.     On December 29, 2015, Mr. Yatribi filed a charge of discrimination with the Equal Employment Opportunity Commission alleging management at Swire Coca-Cola discriminated against him and harassed him because of his Muslim faith and

Moroccan ancestry, and that he had been retaliated against for reporting and opposing the discrimination.

97.    On January 22, 2016, the EEOC notified Ms. Johnson of Mr. Yatribi's charge.

98.    In 2016, Swire Coca-Cola responded in writing to Mr. Yatribi's charge, stating that the company "[v]alues Yatribi as an employee and hopes to find an amicable resolution to this matter."

99.    After Mr. Yatribi filed his charge, Mr. Terrin began constantly interrogating Mr. Yatribi about his injuries and keeping careful tabs on everywhere Mr. Yatribi went.

100.    During this time period, Ms. Logan argued that Mr. Yatribi was "milking it."

101.    Mr. Terrin, though not actually supervising Mr. Yatribi while Mr. Yatribi was on light duty, frequently requested that Mr. Yatribi provide copies of his doctor's notes to Mr. Terrin.

102.    In the hope of setting him up for termination, Mr. Terrin also began papering Mr. Yatribi personnel file. In one instance, Mr. Terrin presented Mr. Yatribi with a write-up, trying to establish a basis for terminating him. When Mr. Yatribi questioned whether Human Resources had approved the write-up, Mr. Terrin was forced to withdraw the discipline.

103.    On November 15, 2017, Swire Coca-Cola suddenly submitted a supplemental position statement to the EEOC, taking a decidedly different tone. In that supplemental position statement, Swire Coca-Cola asked the EEOC not to investigate

many of the incidents of harassment described by Mr. Yatribi, and to issue a no cause finding and close the case.

104.    On December 7, 2016, Mr. Yatribi was called to a meeting with Manager of Sales Phillip Merrill, the two managers that had worked with Mr. Yatribi while he was on light duty, and Senior Human Resources Manager Matt Lambert who was present via telephone.

105.    Mr. Merrill told Mr. Yatribi that Swire Coca-Cola had received notice that Mr. Yatribi had reached maximum medical improvement and had been given an impairment rating of 25%.

106.    Mr. Merrill told Mr. Yatribi that Swire Coca-Cola did not have any positions available that could accommodate Mr. Yatribi's physical impairment, and that therefore, Swire Coca-Cola was terminating Mr. Yatribi's employment effective immediately.

107.    Mr. Lambert then referred to Mr. Yatribi as a "liability."

108.    Though Swire Coca-Cola claimed that it did not have any available positions that Mr. Yatribi could perform with his physical impairment, it made no effort to engage in the interactive process or accommodate Mr. Yatribi until he was fully recovered.

109.    Swire Coca-Cola employs numerous employees in minimally physical positions.

110.    There were numerous light duty jobs available that other employees who required light duty were afforded for indefinite periods of time.

111.    In at least one instance, a small stores account manager that lost his ability to drive his route due to a driving under the influence charge was transferred to an office role.

112.    Swire Coca-Cola also has numerous minimally physical positions involved in managing warehouse operations.

113.    Swire Coca-Cola also has numerous minimally physical positions in its front office.

114.    Swire Coca-Cola's stated explanation for firing Mr. Yatribi was a pretext for retaliatory motive.

## V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. §§ 2000e-2(a)**
**Race/National Origin/Religion-Based Hostile Work Environment Under Title VII**

115.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

116.    Saad Yatribi is a practicing Muslim and individual of Arab and Middle Eastern descent.

117.    Defendant Swire Coca-Cola discriminated against Mr. Yatribi, in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting him to discrimination, and by creating and tolerating a hostile work environment based on his race, national origin, and religion.

118.    The offensive conduct described in the preceding paragraphs was and is sufficiently severe or pervasive to have altered the terms and conditions of employment for Mr. Yatribi.

119.    The discrimination and hostile work environment to which Mr. Yatribi was subjected was perpetrated by Defendant's management employees with supervisory authority over Plaintiff and occurred on a frequent and routine basis over a substantial period of time.

120.    Defendant knew or should have known of the hostile work environment because the highest serving managers in the company engaged in the harassing conduct, and other managers, supervisors, and employees observed it. The harassment was frequent and notorious in nature, and Plaintiff complained about it. Moreover, Plaintiff's complaints were investigated by the highest officers in Defendant's Human Resources Department.

121.    Defendant failed to take prompt or effective action to prevent, correct, or remedy the hostile work environment.

122.    The effect of the practices complained of above has been to deprive Mr. Yatribi of equal employment opportunities and otherwise adversely affect his status as an employee, because of his race, national origin, and religion.

123.    The unlawful employment practices complained of above were intentional.

124.    The unlawful employment practices complained of above were done with malice or reckless indifference to Mr. Yatribi's federally protected rights.

125.   As a result of the events and actions described above, Mr. Yatribi was deprived of equal employment opportunities, experienced emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, and was and is otherwise adversely affected because of his race, national origin, and religion.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 2000e-2(a)**
**Failure to Promote Under Title VII**

126.   The allegations in the foregoing paragraphs are hereby incorporated by reference.

127.   Saad Yatribi is a practicing Muslim and individual of Arab and Middle Eastern descent.

128.   Defendant Swire Coca-Cola discriminated against Mr. Yatribi, in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting him to discrimination, and by failing to promote him based on his race, national origin, and religion.

129.   Mr. Yatribi applied for and was qualified for the area sales manager position.

130.   Despite being qualified for the area sales manager position, Mr. Yatribi was rejected from the position.

131.   After Mr. Yatribi was rejected, the area sales manager position was filled by a white, non-Muslim, non-Moroccan candidate.

132.    The successful candidate, a white male, was given advantages in the

hiring process with the express purpose of preventing Mr. Yatribi from being

promoted.

133.    The effect of the practices complained of above has been to deprive Mr.

Yatribi of equal employment opportunities and otherwise adversely affect his status

as an employee, because of his race, national origin, and religion.

134.    The unlawful employment practices complained of above were intentional.

135.    The unlawful employment practices complained of above were done with

malice or reckless indifference to Mr. Yatribi's federally protected rights.

136.    As a result of the events and actions described above, Mr. Yatribi was

deprived of equal employment opportunities, experienced emotional pain, suffering,

inconvenience, loss of enjoyment of life, and humiliation, and was and is otherwise

adversely affected because of his race, national origin, and religion.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 2000e-3(a)
### Retaliation Under Title VII

137.    The allegations in the foregoing paragraphs are hereby incorporated by

reference.

138.    Defendants engaged in unlawful employment practices in the State of

Colorado in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-2(a), by

retaliating against Plaintiff in response to his protected activity.

139.   Plaintiff engaged in protected activity under § 704 of Title VII, by opposing what he reasonably believed was an unlawful discriminatory employment practice based on his race, national origin, and religion.

140.   Plaintiff opposed and complained about discrimination and harassment based on his race, national origin, and religion by Swire' Coca-Cola's managers.

141.   Mr. Yatribi reported the harassment on multiple occasions and to multiple Swire Coca-Cola managers and human resources employees.

142.   Defendant, acting through its officials, managers, supervisors, and other employees, retaliated against Mr. Yatribi by, among others, failing to promote him to the area sales manager position, disciplining him in response to his complaints of discrimination, and ultimately terminating him after he filed a Charge of Discrimination with the EEOC.

143.   The effect of the practices complained of in the forgoing paragraphs has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because he engaged in protected activity.

144.   The unlawful employment practices complained of in the foregoing paragraphs were intentional.

145.   The unlawful employment practices complained of above were done with malice or with reckless indifference to Mr. Yatribi's federally protected rights.

146.   As a result of the events and actions described above, Plaintiff was deprived of equal employment opportunities, experienced emotional pain, suffering,

inconvenience, loss of enjoyment of life, humiliation, and were and is otherwise adversely affected because of Defendant's unlawful retaliation.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1981**
**Hostile Work Environment Under Section 1981**

147.   The allegations in the foregoing paragraphs are hereby incorporated by reference.

148.   Saad Yatribi is of Arab and Middle Eastern descent.

149.   Mr. Yatribi was subjected to offensive racial epithets and slurs that were sufficiently severe or pervasive as to alter the terms and conditions of his employment.

150.   Swire Coca-Cola, and its management, were aware of the racial jokes and racial slurs because Mr. Yatribi filed internal complaints.

151.   Defendant failed to take reasonable measures to prevent and promptly remedy the racially and ethnically hostile work environment.

152.   Defendant failed to take corrective actions appropriate to remedy the racially hostile work environment.

153.   As a result of Defendant's conduct, Mr. Yatribi was subjected to a hostile and abusive workplace.

154.   The effect of the practices complained of in the forgoing paragraphs has been to deprive Plaintiff of his right to make and enforce contracts, and the enjoyment of the enjoyment of the benefits of employment, and otherwise adversely affect his status as an employee in violation of 42 U.S.C. § 1981.

155.    The unlawful practices described above were intentional.

156.    The unlawful employment practices complained of above were done with

malice or with reckless indifference to Mr. Yatribi's federally protected rights.

157.    Mr. Yatribi has and continues to suffer emotional pain, suffering,

inconvenience, mental anguish, anxiety, depression, loss of enjoyment of life, and

other non-pecuniary losses as a direct result of Defendant's racial discrimination.

### FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1981
### Retaliation Under Section 1981

158.    The allegations in the foregoing paragraphs are hereby incorporated by

reference.

159.    Plaintiff opposed discrimination and harassment based on his race by

Swire Coca-Cola's managers that he reasonably believed were unlawful under 42

U.S.C. § 1981.

160.    Mr. Yatribi reported the racial harassment on multiple occasions and to

multiple Swire Coca-Cola managers and human resources employees.

161.    Defendant, acting through its officials, managers, supervisors, and other

employees, retaliated against Mr. Yatribi by, among others, failing to promote him to

the area sales manager position, disciplining him in response to his complaints of

discrimination, and ultimately terminating him after he filed a Charge of

Discrimination with the EEOC.

162.    Defendant acting through its officials, managers, supervisors, and other

employees, treated Mr. Yatribi more adversely than his similarly situated

counterparts who did not take part in protected conduct opposing race discrimination in the workplace.

163.    The effect of the practices complained of in the forgoing paragraphs has been to deprive Plaintiff of his right to make and enforce contracts, and the enjoyment of the benefits of employment, and otherwise adversely affect his status as an employee because he engaged in activity protected by 42 U.S.C. § 1981.

164.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

165.    The unlawful employment practices complained of above were done with malice or with reckless indifference to Mr. Yatribi's federally protected rights.

166.    Defendant's retaliatory actions did cause and continue to cause Mr. Yatribi to suffer emotional pain, suffering, inconvenience, mental anguish, anxiety, depression, loss of enjoyment of life, and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Saad Yatribi requests the Court enter judgment for the following relief:

a.    All declaratory relief and injunctive relief, as appropriate;

b.    Actual economic damages as established at trial;

c.    Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

d.      Punitive damages for all claims as allowed by law in an amount to be

determined at trial;

f.      Pre-judgment and post-judgment interest at the highest lawful rate;

g.      The maximum tax-offset permitted by law;

h.      Attorneys' fees and costs; and

i.      Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted: May 21, 2020

RATHOD | MOHAMEDBHAI LLC

*s/ Nicholas A. Lutz*
Nicholas A. Lutz
Iris Halpern
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
nl@rmlawyers.com
ih@rmlawyers.com

ATTORNEYS FOR PLAINTIFF